*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re BACHMAN, Minors.

UNPUBLISHED
September 14, 2023

No. 363733
Livingston Circuit Court
Family Division
LC No. 18-015801-NA

In re BACHMAN, Minors.

No. 363801
Livingston Circuit Court
Family Division
LC No. 18-015801-NA

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

In Docket No. 363733, respondent-father appeals as of right an order terminating his parental rights to three children, KB, AB, and JB, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions leading to adjudication), (g) (failure to provide proper care or custody), and (j) (likelihood of harm if children returned to parent). In Docket No. 363801, respondent-mother appeals as of right the same order, whereby the court terminated her parental rights to the same children under the same statutory grounds. Respondent-father argues that reversal is required because a social worker who argued in support of suspending parenting time had been subject to disciplinary proceedings by the Disciplinary Subcommittee of the Board of Social Work. Respondent-mother argues that reversal is required because the court erroneously suspended parenting time, failed to consider the progress she made in her services, and unreasonably delayed the proceedings and final order. We affirm.

Respondents have an extensive history with Child Protective Services (CPS). They were in the midst of divorce proceedings throughout the current child-protective proceedings. Evidence was presented that, while in respondents' care, the children were in an almost feral state; they fought and swore often, seemed unable to play normally, and had abnormal delays in potty-training. They had issues with food insecurity because respondent-father, who is almost 40 years

older than respondent-mother and has a history of relationships with vulnerable women significantly younger than he, had kept the refrigerator locked. Respondent-mother had mental health issues that caused instability and poor parenting, and the children were removed from her care in the autumn of 2018, and placed with respondent-father (although they were out of his care for a short emergency period). Approximately two months later, the children were removed from respondent-father's care after he failed to follow through with safety plans designed to keep dangerous people away from the children. Petitioner sought termination in 2020, but after a multi-day termination hearing, the parties reached an agreement whereby petitioner would withdraw the request for termination and respondents would engage in additional services. In May 2021, petitioner again sought termination, and another termination hearing took place in 2021 and 2022. The court concluded that respondents had not sufficiently benefited from services and that termination was in the children's best interests.

## I. DOCKET NO. 363733

Respondent-father contends that the trial court should not have terminated respondent-father's parental rights because the suspension of parenting time that occurred on April 29, 2021, was based on the testimony of social worker James Henry, who has been the subject of disciplinary proceedings by the Disciplinary Subcommittee of the Board of Social Work.

We review this unpreserved issue under the plain-error doctrine. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Under this doctrine, for reversal to be warranted, a respondent must establish that (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected his or her substantial rights, i.e., affected the outcome of the proceedings. *Id.* at 9; *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Additionally, the error must have "seriously affect[ed] the fairness, integrity or public reputation" of judicial proceedings. *In re Utrera*, 281 Mich App at 9 (quotation marks and citations omitted; alteration in original).

Unless there are certain aggravated circumstances, "[u]nder Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). See also *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). Respondent-father contends that DHHS did not comply with this duty because the suspension of parenting time on April 29, 2021 was improper. We note, first, that petitioner filed its final termination petition on May 27, 2021. A trial court has explicit statutory authority to suspend parenting time once a termination petition has been filed. MCL 712A.19b(4). Before that, a suspension of parenting time can occur if visitations would pose a danger to a child's physical health, life, or mental well-being. *In re Ott*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 362073); slip op at 10-11.

Respondent-father contends that the suspension of parenting time was improper because of a consent order related to Henry that was signed on April 26, 2021. It stated that Henry needed to complete continuing education classes in ethics and pay a $2,500 fine, or his license as a social worker would be suspended. Henry had proper educational credentials but had been practicing

social work in 2018 without being licensed, and had improperly referred to himself as a doctor.[1] He had not needed a license to act as the director of a children's trauma center but was involved with social work such that a license was needed. He averred that he took responsibility for his actions and had not meant to be deceptive. Henry obtained licensure as a limited license master social worker on March 5, 2020, and again on March 5, 2021.

Respondent-father contends that "counsel across the state have learned that the DHHS was no longer to refer children for assessment to the Childhood Trauma Assessment Center, was no longer to use James Henry as an expert, and was not to use assessments completed at [the trauma center] in the past." This statement is unsupported by any documentation. See MCR 7.212(C)(6) and (7) (referring to an appellant's obligation to support pertinent facts with citations to the record). In addition, the court explicitly did not qualify Henry as an expert. Also, certain trauma assessments at issue were undertaken and Henry's testimony was taken after he had obtained his limited licensures. We note that LaShawn Strickland, who holds a "limited license master of social work[]," was qualified as an expert in "counseling for foster care/CPS cases" earlier in the proceedings. In other words, the "limited" nature of Henry's licensure was not particularly pivotal.

Finally, Henry's assessments and testimony were not the only pieces of evidence on which the trial court relied in suspending parenting time. At the pertinent hearing, the caseworker reported that some visitations had gone well and some had gone poorly. But she said that it was apparent that the children "are not able to handle" the visits because of how excessively dysregulated they became in connection with them. The dysregulation would last for an extended period. The caseworker and the children's guardian ad litem (GAL) wanted a goal change to adoption. In addition, the children's therapist said that their dysregulation was severe and concerning. The court agreed with the suggested goal change and with the suspension of parenting time. It explicitly relied not only on Henry's statements but on statements from the caseworker and the therapist.[2] Respondent-father contends that he should have been informed about the disciplinary proceedings and should have been allowed to cross-examine Henry. But again, by the time in question Henry was licensed, and the court's decision was supported by two additional witnesses.

Under the circumstances, reversal under the plain-error doctrine is not warranted.[3]

## II. DOCKET NO. 363801

Respondent-mother does not challenge Henry's qualifications but argues that the trial court should not have suspended parenting time and should not have found statutory grounds for termination.

---

[1] He does have a Ph.D. degree.

[2] On October 8, 2021, the caseworker reported that the children had been making "huge strides" since the suspension of parenting time.

[3] Respondent-father does not directly challenge the existence of statutory grounds for termination beyond arguing that parenting time should not have been suspended.

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3), and this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established, *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, even if some evidence supports it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id.*

As noted, unless there are certain aggravated circumstances, "[u]nder Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85; see also *In re Rippy*, 330 Mich App at 355. "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich at 89. Like respondent-father, respondent-mother appears to contend that DHHS did not comply with this duty because the suspension of parenting time on April 29, 2021 was improper.[4] Again, the trial court has explicit statutory authority to suspend parenting time once a termination petition has been filed. MCL 712A.19b(4). Before that, a suspension of parenting time can occur if visitations would pose a danger to a child's physical health, life, or mental well-being. *In re Ott*, ___ Mich App at ___; slip op at 10-11.

The court's suspension of parenting time was amply supported by the evidence. After the GAL moved to suspend parenting time, Henry testified at the pertinent hearing that AB and JB experienced regression, dysregulation, and hyperactivity when they were in contact with respondents. Henry said that such extreme behaviors negatively affect ongoing development.

As noted, the caseworker reported that some visitations had gone well and some had gone poorly. But she said that it was apparent that the children "are not able to handle" the visits because of how excessively dysregulated they became in connection with them. The dysregulation would last for an extended period. The children's therapist said that the children's dysregulation was severe and concerning.

The court was obligated to look at the effect of parenting time *on the children*, and it concluded that the children were being harmed from visitations. It is notable that, on October 8, 2021, the caseworker reported that the children had been making "huge strides" since the suspension of parenting time. No basis for reversal is apparent in connection with the suspension of parenting time.

Respondent-mother also seemingly contends that because three different termination petitions were filed, petitioner must have been focused on termination from the start of the case. By contrast, petitioner was actually willing to give respondent-mother additional time to show progress. Indeed, the first two termination petitions were withdrawn by agreement. And there was a plethora of testimony about the various services offered to respondent-mother throughout

---

[4] The court concluded that reasonable efforts had been expended by petitioner. A reasonable-efforts finding is reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021).

the case. The caseworker averred that respondents had been offered every "reasonable and available" service.

MCL 712A.19b(3) states, in relevant part:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[5]
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent-mother contends that petitioner failed to establish these grounds for termination and implies that petitioner embellished the evidence again her. Multiple people presented information in support of termination.

Before the start of the continued termination hearing on January 10, 2022, the GAL reported that the children were doing "exceptionally well," and that their progress appeared to be related to the suspension of parenting time. AB's teacher had described him as " 'a completely different person' " who was " 'perfect.' " KB, who was eight, was finally potty-trained, and JB was learning how to "engage with her siblings and play appropriately."

The court-appointed special advocate said that respondents had not succeeded in learning how to engage, redirect, and keep safe all three children at once but the foster parents had. The

---

[5] Subdivision (g) was amended by 2018 PA 58, effective June 12, 2018, to add the language about finances.

caseworker stated that respondent-mother had yet another psychological evaluation[6] on September 3, 2021. The report indicated that she was " 'hypomanic' " and that some of her ideas " 'had a delusional quality.' " Respondent-mother had asserted that her current boyfriend was the father of all five[7] of her children, despite scientific evidence to the contrary. The caseworker had continuing concerns about respondent-mother's mental health. She said that, during parenting time with respondent-mother in the spring of 2021, JB got hurt on a slide[8] and respondent-mother, while tending to JB, ended up not properly supervising her other child whom she had brought to the visit. JB called out for her foster mother. The caseworker said that the improper supervision that occurred earlier in the case was continuing to occur and that respondent-mother had not sufficiently benefited from services. She also said that the children had a structured environment in the foster home and were respectful to the foster parents.

The children's therapist testified that the children were in great need of finality and stability. She stated that since the suspension of parenting time, KB and AB had been able to share more of their traumas from when they lived with respondents. She said that respondents had minimized things "or denied that what the kids are reporting had ever occurred." She said that respondents had inconsistences with setting up a structured environment for the children, which the children needed to heal from their traumas.

The therapist noted that respondent-mother had been inconsistent in engaging with her and missed virtual appointments. She noted that respondent-mother seemed to be unaware of KB's medication regimen. She stated that the children's behaviors, which had been "wild" and "animalistic," had improved and she attributed part of this to the cessation of parenting time. She said that the children were receiving a high level of care and that their needs were "very high."

The therapist stated that, relatively recently, respondent-mother had said that she was planning to tell the children that her boyfriend was their father, and the therapist was concerned about the effect of this on their stability. The therapist said that KB stated that respondent-mother had bitten her in the past; respondent-mother initially admitted this; and then, subsequently, respondent-mother denied it. The therapist averred that respondent-mother was "inconsistent with historical facts," and this was causing KB to have problems distinguishing between the truth and a lie. The therapist said that the children had regressive behaviors "tied to the trauma that they have experienced while they were in their parents' care." She again said that the suspension of parenting time had helped the children to make progress.

---

[6] She had several throughout the case.

[7] Respondent-mother had two children with her boyfriend during the pendency of this case.

[8] The caseworker thought the injury resulted from improper supervision. Respondent-mother takes issue with inconsistences in the caseworker's testimony and implies that she was not a reliable witness, but she testified on multiple days and had opportunities to refresh her recollection about this lengthy case. This Court defers to a trial court's assessment of credibility. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

The therapist opined that the foster parents could model appropriate expressions of feelings for the children, ensure their safety, provide structure, constantly supervise them, and teach appropriate boundaries, but respondents could not. She reiterated that the children were in extreme need of permanency. She noted that the parenting needs for these three traumatized children were different from the needs of a nontraumatized child. She said that the children's attachments to respondents were unhealthy.

It is true that respondent-mother rectified some of the issues leading to adjudication, such as substance abuse and housing. But there was evidence that she continued to be ineffective at proper supervision and she posed a risk to the children's mental well-being. We do not have a firm and definite conviction that the trial court made a mistake in finding that the statutory grounds for termination had been established.[9] We note that subdivision (j) encompasses emotional harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Respondent-mother emphasizes that she has her two younger children under her care. But testimony adequately established how the instant children, who had been traumatized, differed significantly in their needs as compared to nontraumatized children.

Lastly, respondent-mother argues that the trial court violated the court rules in the timing of the termination hearing and the decision.

This Court reviews issues of statutory and court-rule interpretation de novo. *In re Mason*, 486 Mich at 152. A ruling on a request for a continuance is reviewed for an abuse of discretion. *In re Jackson*, 199 Mich App 22, 28; 501 NW2d 182 (1993).

MCL 712A.19b(1) states, in pertinent part: "The court shall issue an opinion or order regarding a petition for termination of parental rights within 70 days after the commencement of the initial hearing on the petition. The court's failure to issue an opinion within 70 days does not dismiss the petition." MCR 3.977(I)(1) states as follows regarding a termination of parental rights:

> The court shall state on the record or in writing its findings of fact and conclusions of law. Brief, definite, and pertinent findings and conclusions on contested matters are sufficient. If the court does not issue a decision on the record following hearing, it shall file its decision within 28 days after the taking of final proofs, but no later than 70 days after the commencement of the hearing to terminate parental rights.

The termination hearing commenced on October 8, 2021, and spanned five additional days: January 10, February 18, April 15, April 22, and April 29 of 2022. The referee issued her opinion on October 12, 2022, and the trial court adopted the recommendation on October 18, 2022. The court's order was obviously issued more than 70 days after the commencement of the hearing and more than 28 days after the final taking of proofs.

Of relevance is *In re TC*, 251 Mich App 368; 650 NW2d 698 (2002). In that case, the termination hearing commenced on September 28, 1999. *Id*. at 369 n 1. The court decided to

---

[9] Respondent-mother does not make a specific argument about best interests.

conduct an additional review, which occurred on February 8, 2000. *Id*. The court then scheduled a best-interests hearing for February 10, 2000, but the respondent's attorney requested adjournments. *Id*. The best-interests hearing took place on June 2, 2000, and the trial court issued its opinion on August 17, 2000. *Id*. The respondent acknowledged the statement from MCL 712A.19b(1) that "the court's failure to issue an opinion within 70 days does not dismiss the petition," but argued that the court rule took precedence in such a procedural matter and that if the Supreme Court intended for there to be no sanctions for a violation, it would have stated as much in the rule.[10] *Id*. at 370.

This Court rejected the respondent's argument, reasoning that "[t]his Court has consistently interpreted [a preceding section in the court rules] as not requiring dismissal where the time limits set forth in that section have been violated." *Id*. at 370-371. This Court added, "[t]here is no reason to suppose that the Supreme Court intended that the penalty for delay would be more delay." *Id*. at 371. The Court also cited MCR 5.902(A), the predecessor to MCR 3.902(A), which states that "[l]imitations on corrections of error are governed by MCR 2.613." See *id*. The Court noted that MCR 2.613(A) provides that errors are not grounds for disturbing an order unless the failure to do so would be inconsistent with substantial justice. *Id*. The Court concluded:

> Thus, the Supreme Court has stated in the court rules that a trial court's error in issuing a ruling or order or an error in the proceedings is not grounds for this Court to reverse or otherwise disturb an order unless this Court believes that failure to do so would be inconsistent with substantial justice. Thus, we conclude that the family court's failure to adhere to the time requirements imposed by [the predecessor to MCR 3.977(I)(1)] does not require reversal of its order terminating respondent's parental rights. [*Id*.]

The *In re TC* Court stated that it had granted the respondent's application for leave to appeal "limited to the question whether the trial court erred by continuing the termination trial more than 70 days after its commencement." *Id*. at 369 (quotation marks omitted). However, the Court's reasoning is applicable by analogy to the violation of the 28-day rule, as well. Of particular significance is the *In re TC* Court's reliance on MCR 2.613(A), which states:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

---

[10] The court rule at issue in *In re TC* was the predecessor to MCR 3.977(I)(1) and was worded identically. See *In re TC*, 251 Mich App at 369.

The Court in *In re TC* concluded that the delay in that case was not inconsistent with substantial justice. *Id*. at 371.[11]

The final proofs at the termination hearing in the present case were taken on April 29, 2022, and respondent-father's counsel requested an extension to file written closing arguments. No one objected to this, and the closings for both respondent-father and respondent-mother were filed on June 13, 2022. The referee could have been timelier in issuing her recommended order, but it does not appear inconsistent with substantial justice to let the final order stand despite the violation of the 28-day rule, given the children's extreme need for permanence.

As for the violation of the 70-day rule, this was in large part due to the number of witnesses who testified at the termination hearing. In addition, the court mentioned on the first day of the termination hearing how difficult it had been to schedule courtroom time, and the record indicates that the date for the second day of testimony and additional dates had needed to be rescheduled "[d]ue to Coronavirus precautions" and "[d]ue to a Covid exposure and precautions."[12] It is not inconsistent with substantial justice to let the final order stand despite the violation of the 70-day rule, given that courtroom time needed to be found to allow the testimony of many witnesses and the extenuating circumstances of COVID-19 delays.

Respondent-mother also mentions MCR 3.977(H)(1)(b), which states: "The hearing on a supplemental petition for termination of parental rights under this subrule must be held within 42 days after the filing of the supplemental petition. The court may, for good cause shown, extend the period for an additional 21 days." This issue was raised on June 9, 2021. The attorneys noted that the supplemental petition had been filed on May 27, 2021, and that the proceedings needed to commence within the time frame (42 days plus 21 days) set by the court rules. The GAL argued that there had been a "bottleneck effect" because of COVID-19, that the referee who had presided over almost the entire case to that point was familiar with the case and should be the referee presiding over the termination hearing, and that the court should accommodate that referee's schedule. The court said that the COVID-19 situation was "unprecedented," and it made sense for the same referee to preside over the termination hearing. The court said that some "leniency" was needed because of the effect of the pandemic and that the referee in question "knows the ins and outs of the case." The date that accommodated her was October 8, 2021, and that is when the termination hearing commenced. This approximately two-month delay from the time specified in the court rule does not require reversal in light of the reasoning set forth by the trial court. In *In re Jackson*, 199 Mich App at 28-29, this Court stated that the failure to adhere to the time

---

[11] In addition, the Court in *In re TC*, in analyzing the issue on appeal and reciting the language from the court rule, italicized both the 70-day language *and* the 28-day language from the court rule. *Id*. at 369. The Court also referred to the "time requirements [plural] imposed by [the predecessor to MCR 3.977(I)(1)] . . . ." *Id*. at 371. While the Court was *explicitly* analyzing the 70-day period, *id*. at 369, it appears that the Court, in reaching its decision, was considering the overall posture of the case.

[12] The second day of the hearing was also postponed because of a conflict in the schedule of respondent-father's attorney.

requirements of the predecessor to MCR 3.977(H)(1)(b) "will not lead to dismissal of a termination order," and that the trial court could "extend the time for a hearing beyond the additional twenty-one days."

Respondent-mother takes issue with four adjournments that occurred in early 2021. We review this unpreserved issue under the plain-error doctrine. On January 5, 2021, the court noted that DHHS was now the petitioner[13] and did not currently have an attorney, so it adjourned a review hearing.[14] The court adjourned the hearing until February 2021, but respondent-mother's attorney then, in February, objected to the person designated as DHHS's new attorney. Accordingly, another adjournment took place. On March 17, 2021, it was elicited that the person who had been intending to now represent DHHS had a conflict because his wife had represented some witnesses. Respondent-mother's attorney did not disagree that there was an "unwaiveable [sic] conflict," but asked that any adjournment be short. On April 13, 2021, respondent-mother's attorney objected to the introduction of trauma assessments of the children and argued that he needed to cross-examine the person who prepared them. The court, therefore, adjourned the proceedings once again.

Two of the adjournments were at the behest of respondent-mother's attorney. The others were because DHHS did not have an attorney and because of a conflict. Under these circumstances, respondent-mother has not established any entitlement to relief under the plain-error doctrine. As noted by the court on April 29, 2021, the delays gave respondents additional time to work on their services.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick

---

[13] The identity of the petitioner changed throughout the case.

[14] The problem was that the new prosecutor was involved in respondents' divorce case.